# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**IEFMS, Ltd., d/b/a FLEXX,**

    Plaintiff,

-vs-                                            Case No. 15-C-917

**ECONOMY LIFT RENTALS, LLC,
SUSAN SUGRUE, MICHAEL SUGRUE,
M&W INDUSTRIAL EQUIPMENT CORP.,
JAMES J. WEBBER, MICHAEL WEBBER, and
JAMES J. WEBBER II,**

    Defendants.

## DECISION AND ORDER

This is an action brought by IEFMS, Ltd., d/b/a/ Flexx, a company that leases fleets of industrial equipment. Flexx is suing two groups of defendants: the Economy defendants and the M&W defendants. According to the complaint, Flexx agreed to lease commercial scissor and boom lifts to Economy. At Economy's request, Flexx purchased the lifts from M&W, which was then supposed to deliver the lifts to Economy. Instead of delivering the lifts, Flexx alleges that M&W conspired with Economy to defraud Flexx by "knowingly issuing false invoices and false Certificates of Acceptance in order to induce Flexx to pay approximately $1.5 million for lifts that Economy has not turned over to Flexx or even been able to

locate." Amended Complaint, ¶ 11. In other words, Flexx paid for non-existent lifts.

Flexx brings a series of claims, including breach of the lease agreement (Economy), breach of contract (M&W), tortious interference with contract (M&W), fraud (all defendants), and conspiracy (all defendants). Flexx also moves for a preliminary injunction. Flexx asks the Court to freeze the defendants' assets; restrain and enjoin the defendants from dissipating the proceeds of the fictional lifts; order the defendants to turn over records establishing the disposition of proceeds; and direct Economy to help Flexx repossess any existing lifts. For the reasons that follow, Flexx's motion is denied.[1]

## I. Background

Flexx's principal place of business is in San Antonio, Texas. Economy and M&W are Wisconsin companies located in Waukesha.

Flexx's business relationship with Economy began in February of 2014. At that time, Michael Sugrue, Economy's general manager, encouraged Flexx to purchase lifts from M&W because it would reduce Flexx's costs of delivery. Declaration of Robert Coffey, Flexx's Director of Originations.

---

[1] Oral argument, requested by counsel for M&W, is not necessary.

The practice for the purchase of lifts was as follows. Michael Sugrue would call or send an e-mail to Tim D'Anza, Flexx's Rental Segment Manager, expressing the need to lease additional lifts. This request was typically accompanied by a "quote" from M&W presented to Flexx on a standard M&W invoice form. The M&W quote/invoice matched the quantity of lifts Economy wanted to lease from Flexx. The invoice was submitted to Flexx via facsimile or e-mail. Flexx would indicate acceptance by a phone call between Sugrue and D'Anza. Flexx then prepared a new Lease Schedule and Certificate of Acceptance for the lifts to be purchased and leased.

Susan Sugrue, Michael's wife and the managing member of Economy, signed off on each Lease Schedule and certified the corresponding Certificate of Acceptance, representing to Flexx that the lifts – identified by serial number – had been received and accepted. Susan Sugrue submitted the signed documents to Flexx via e-mail. Upon receipt of the signed documents, Flexx would pay the invoice.

In total, M&W submitted 37 invoices to Flexx for the sale of 189 lifts (including three forklifts), all of which were supposedly delivered to Economy. Upon receipt of payment, M&W would issue a check to Economy for the amount of the Invoice, minus a small handling fee. Flexx was not

aware that the lifts it was purchasing from M&W did not exist or that M&W was transmitting all or substantially all of the proceeds of its fraud on Flexx to Economy.

M&W's President, James J. Webber, explains that M&W has been doing business with Economy for the better part of a decade. Often, Economy would sell machinery to M&W, only to buy it back from M&W weeks or months later if it found a buyer or lessee for the equipment. As M&W continued working with Economy, the relationship became less formalized. M&W and Economy would often exchange invoices when money changed hands, but the transaction was not documented as a matter of course. *See* Webber Declaration.

Michael Sugrue told Webber that Flexx was Economy's financial partner or financial backer. Webber observed Sugrue painting Flexx on his machinery, and there were signs outside his business with the Flexx company name on it.

In July of 2014, Sugrue told Webber that he had machinery on his property that Flexx would be financing for him, but that the sale needed to go through a third party. Webber believed that the transactions were almost identical to many of those that had already occurred – M&W would, effectively, be buying the machinery from Economy, then reselling the

machinery to Flexx for a small profit. For these transactions, Flexx would wire-transfer the funds to M&W, and then M&W would cut a check back to Sugrue for most of the value of the machinery. Occasionally, M&W would pay Sugrue in kind, in which case Sugrue would acquire a piece of equipment rather than receive full payment from M&W. Sugrue represented to Webber and to M&W employees that the machinery on each of the invoices with Flexx existed and was located on his property.

For each transaction, Sugrue would handwrite an invoice with the appropriate billing information and serial numbers, and an M&W employee would then type it up and tender it back to Sugrue. Neither Webber nor M&W employees had knowledge of the actual nature of the relationship between Economy and Flexx, nor did M&W have knowledge that the machinery on the invoices did not exist. Webber believed that Flexx was aware of the full details of each transaction.

## II. Analysis

A preliminary injunction is "an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The party seeking a preliminary injunction must make a threshold showing that (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a

final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits. *Id.* at 662 (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

If these elements are satisfied, the Court proceeds to consider (4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted, and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties – i.e., the "public interest." *Id.* "The court weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id.*

This action was originally brought by Flexx in an effort to repossess lifts from Economy. In that connection, the Court granted Flexx's motion for an order directing Economy to provide records establishing the location of the leased equipment – approximately 239 boom and scissor lifts. ECF No. 7. Flexx and Economy then engaged in discussions for the entry of a stipulated injunction. Thus far, Flexx has recovered only 58 lifts, 49 of which were sourced from a non-M&W supplier. This means that Economy

- 6 -

Case 2:15-cv-00917-PP Filed 11/09/15 Page 6 of 9 Document 49

can only account for a handful of the 189 lifts supposedly delivered by M&W. Indeed, Economy explicitly stipulated to the existence of "reliable information which suggests that a significant number of the alleged 240 lifts may not exist, but that documents were created to give Plaintiff the impression that such lifts had been purchased by Plaintiff and delivered to [Economy]." ECF No. 17, Stipulation as to Entry of Agreed Preliminary Injunction, ¶ 6. Accordingly, Flexx appears likely to succeed on the merits of its claims.

Even so, Flexx cannot establish the existence of irreparable harm or an inadequate remedy at law. Once Flexx discovered the true nature of the fraud, this became a damages case, not a specific performance, return-of-property case. In other words, Flexx can be made whole through an award of damages at the conclusion of this litigation. Flexx cannot be made whole by ordering the return of property that does not exist.

Flexx argues that the defendants' outrageous and fraudulent conduct demonstrates that they will likely hide, dissipate, or dispose of the money they fraudulently obtained. This is pure speculation and, in any event, such could be the case in any action sounding in fraud. All litigation presents the possibility that the defendant will have less money at the conclusion of the case than at the outset. This falls far short of establishing

- 7 -

Case 2:15-cv-00917-PP   Filed 11/09/15   Page 7 of 9   Document 49

irreparable harm.

Irreparable harm – harm that cannot be prevented or fully rectified by the final judgment after trial – occurs if the plaintiff becomes insolvent or loses its business, is unable to finance the lawsuit, incurs damages that are very difficult to calculate, or *if the defendant becomes insolvent or loses its business. Roland Mach. Co. v. Dresser Indus. Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Dissipating funds is different from becoming insolvent. Indeed, it makes little sense for the defendants to bankrupt their businesses because those businesses are the sole sources of income for their members.

In this respect, the defendants would also prevail at the balancing stage because Flexx is essentially asking the Court to shut down the defendants' businesses. *See* Webber Declaration, ¶ 25 ("If M&W's bank accounts are frozen, we will be unable to pay any of our expenses, and the company will be forced to lay off our employees and close down"); Declaration of Michael Sugrue, ¶ 26 ("If Economy is unable to pay its expenses, Economy will be unable to keep its doors open"). Flexx, on the other hand, is one of the leading *national* providers of material handling equipment, generates between $100 and $500 million in annual revenue, and employs approximately 500 people. Declaration of Joseph Newbold, Ex.

- 8 -

5. Flexx would suffer no irreparable harm if the requested injunction is denied, but the defendants, both of which are small, local, family-owned businesses, would suffer irreparable damage.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** Flexx's motion for a preliminary injunction [ECF No. 27] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 9th day of November, 2015.

**BY THE COURT:**

*[signature: Rudolph T. Randa]*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**